## JONES v. VAN BENTHUYSEN.

1. A dealer in tobacco, who is assessed upon his sales thereof when it is in a bonded warehouse, is not liable to be taxed for the revenue stamps required to be affixed thereto before the removal thereof, unless they were at the time of such sales so affixed, whereby they entered into the value of the tobacco and formed a part of the price thereof.
2. It is error to instruct touching the law applicable to facts of which there is no evidence.

ERROR to the Circuit Court of the United States for the District of Louisiana.

The facts are stated in the opinion of the court.

*Mr. Assistant Attorney-General Smith* for the plaintiff in error.

*Mr. John D. Rouse* and *Mr. William Grant, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

Sidney A. Stockdale, late collector of internal revenue at New Orleans, was sued by Van Benthuysen to recover a tax illegally exacted of him. The case was tried by a jury, and a verdict and judgment rendered for the plaintiff below. Stockdale died pending the suit, and this writ is prosecuted by his executrix.

The facts of the case, as presented to the jury, are embodied in a short bill of exceptions, from which it appears that the plaintiff was a commission merchant, whose business was the sale of manufactured tobacco for others; that he stood charged on the books of the assessor of that district with sales of tobacco amounting to $1,256,000, on which was assessed a tax of two per cent, which he paid to the collector under protest.

The ground of this protest is that the sales so made by him, as shown by the bill of exceptions, " were made while the tobacco was in bond, and was situated in the bonded warehouse; that said tax was assessed and collected upon the value of the tobacco and upon the amount of stamps which by law was required to be affixed upon the same before it was released from the bonded warehouse; that the value of the tobacco so

sold was $787,855.67, and the amount of stamps placed upon said tobacco was $468,144.33; and that plaintiff, as a commission merchant, charged his commissions as against his principals, both upon the value of the tobacco in bond and upon the amount invested in said stamps; that the special tax was assessed and collected upon both the value of the tobacco and the amount of the stamps."

The court refused to charge that the tax on the sales made by plaintiff was properly assessed by the defendant on the gross amount of them, namely, $1,256,000; but the jury was instructed that the special tax of two per cent upon the amount of sales of dealers in tobacco could not properly be collected upon the stamps which were required to be affixed upon the tobacco in bond, and that to the extent of the tax upon the stamps, which plaintiff had paid, he was entitled to recover.

The act of July 20, 1868, c. 186, under which these taxes were assessed, enacts that "dealers in tobacco, whose annual sales exceed $100, and do not exceed $1,000, shall each pay $5, and when their annual sales exceed $1,000, shall pay in addition $2 for each $1,000 in excess of $1,000. Every person whose business it is to sell, or offer for sale, manufactured tobacco, snuff, or cigars shall be regarded as a dealer in tobacco." 15 Stat. 125, 152.

Undoubtedly this statute only intended to impose a tax upon the sales of tobacco, and if the dealer was also the owner of stamps to be used in paying the duties on tobacco, he could sell them separately in any quantity, without being liable to a tax for such sales. When unattached to the tobacco they do not enter into its value, and they can be bought and sold at their face value as an independent commodity, to be used when and wherever the purchasers choose to do so. For such sales no tax is imposed upon the seller or the buyer.

On the other hand, we are of opinion that when they are once attached to the tobacco and cancelled, and can never be lawfully used again, they cease to have any separate and independent value, and that which they had previously has become merged into that of the tobacco. All subsequent sales are

made upon the basis of the increased value the tobacco has acquired by the payment of the stamp duty, and can never be estimated apart from this.

It would seem to follow from this that if the stamps for which the plaintiff was charged by the collector were not affixed to the tobacco at the time he made the sale, no tax should be charged to him for that value. On the other hand, if the stamps were affixed at the time of the sale, they then entered into the value of the tobacco purchased, and the broker who made the sale should be taxed on the price of the tobacco as it was sold.

In the case before us it is stated that the aggregate sum of $1,256,000 of sales on which plaintiff paid the tax was made up of a vast number of separate sales, during a period running from April, 1869, to January, 1872, of which he made monthly reports to the assessor. It is obvious that the owner of the tobacco in a bonded warehouse might have sold it without any stamps on it, as the law did not require the stamps to be affixed until it was about to be removed. And we see no reason why a single lot of tobacco might not be sold several times before it came to a purchaser who wished to take it out of the warehouse, when for the first time the stamps would be attached. For such sales as this no tax could be rightfully assessed for the value of the stamps. After the stamps were attached their value necessarily constituted part of the price for which the tobacco sold, and for this price the dealer should be taxed.

It follows that, in deciding the liability of the plaintiff to taxation on these sales, it is important to know in the case of each sale whether the stamps had been affixed to the tobacco at the time of the sale or not.

There is in the bill of exceptions nothing which enables us to ascertain this fact, nor from which the jury could ascertain it. The language of the bill of exceptions is that the sales of tobacco for which the disputed tax was collected " were made when the tobacco was in bond, and was situated in the bonded warehouse," but not a word to show whether the stamps had then been affixed to the tobacco or not.

Under these circumstances we do not think the court was

authorized to charge that, "if the jury found as a fact that such tax had been levied and collected from plaintiff, not only upon the proceeds of tobacco sold in bond, but upon the amount of stamps required to be affixed upon such tobacco before it could be delivered from the bonded warehouse," that to the extent of that sum plaintiff was entitled to recover.

The right to recover did not depend upon the amount of stamps required to enable the tobacco to be taken out of the warehouse, or that might have been affixed long after the sale, but upon whether said stamps were affixed to the tobacco at the time of the sale, and, therefore, entered into the purchase price.

*Judgment reversed, with directions to grant a new trial.*