BROWN & WILLIAMSON, (P.R.) INC., demandante y apelada, *v*. RAFAEL SANCHO BONET, TESORERO DE PUERTO RICO, demandado y apelante.

Núm. 7604.—*Sometido:* Junio 10, 1938.—*Resuelto:* Marzo 10, 1939.

*Hon. Procurador General B. Fernández García* y *Luis Janer, Subprocurador,* abogados del apelante; *James R. Beverley, R. Castro Fernández* y *José López Baralt,* abogados de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

La demandante, una corporación organizada bajo las leyes de Puerto Rico con oficina principal en San Juan, declaró para el año contributivo 1935–36, poseer los siguientes bienes:

"Efectivo en caja _____ $3,268.34
"Bienes muebles_____ 17,632.58
"Notas a cobrar_____ 38,827.28
"Gastos pagados por anticipado_____ 940.59

"Total_____ $60,668.79."

Conjuntamente con su declaración, radicó el siguiente detalle de sus bienes muebles:

"PROPIEDADES EN SAN JUAN:
"Mercancías _____ $2,407.40
"Mobiliario _____ 894.67
"Autos _____ 2,146.34
"Mat. (prop.) _____ 32.00
"Sellos R. I. en mercancías por vender_____ 4,046.04

"Total_____ $9,526.45

"PROPIEDADES EN PONCE:

"Mercancías _____ $2,407.39
"Mobiliario _____ 236.80
"Autos _____ 1,415.90
"Sellos de R. I. en mercancías por vender_____ 4,046.04

"Total_____ $8,106.13."

El Tesorero de Puerto Rico a los efectos del pago de la contribución sobre la propiedad fijó el valor de la propiedad personal fungible de la demandante en $17,630, esto es, consideró como tal propiedad los $8,092.08 empleados por la demandante en sellos de rentas internas para adherirlos como los adhirió a sus mercancías por vender.

No conforme la demandante apeló para ante la Junta de Revisión e Igualamiento. La junta sostuvo la tasación del Tesorero. Entonces pagó la suma de $525.92 importe de la contribución, haciéndolo bajo protesta en cuanto a $201.90 a que ascendía la contribución por el valor de los sellos, y entabló este pleito reclamando la devolución de lo pagado bajo protesta con más sus intereses y las costas, gastos y honorarios de abogado.

Emplazado el demandado, excepcionó la demanda. Su excepción fué declarada sin lugar. Luego estipuló con la demandante una narración de hechos, cuya substancia dejamos expuesta, quedando sometida a la corte de tal modo la resolución de la cuestión de derecho envuelta, a saber: ¿Puede considerarse como propiedad tributable el valor de los sellos de rentas internas adheridos a las mercancías en cumplimiento de la ley a los efectos de que dichas mercancías puedan venderse? La corte decidió la cuestión en la negativa y el demandado apeló para ante este tribunal.

Que los sellos de rentas internas en sí mismos no son propiedad tributable ha sido claramente resuelto. En 23 R.C.L. 953, citado por el propio apelante, se dice:

"Los sellos de rentas internas de los Estados Unidos son instrumentos del gobierno general para el cumplimiento de sus funciones

legítimas. Representan de por sí la contribución que ese gobierno impone a los negocios de la comunidad, para su propio sostenimiento. Son los giros mediante los cuales se recibe esa contribución anticipadamente, y los comprobantes a virtud de los cuales su pago se hace manifiesto. Su capacidad para responder a esos fines es lo que les da valor como propiedad. De otro modo carecen de valor y en su consecuencia, como propiedad, están exentos de toda contribución estadual y local.''

Pero el apelante sostiene que la situación varía cuando los sellos se adhieren a la mercancía en cuyo caso forman parte del valor de la misma y constituyen propiedad tributable, invocando en apoyo de su contención lo decidido por la Corte Suprema de los Estados Unidos en *Jones* v. *Van Benthuysen*, 103 U.S. 87, a saber:

''Los hechos de este caso, tal cual fueron presentados al jurado, figuran en un corto pliego de excepciones, del cual se desprende que el demandante era un comerciante comisionista que se dedicaba a vender tabaco manufacturado a terceras personas; que según los libros del tasador de aquel distrito había efectuado ventas de tabaco ascendentes a $1,256,000, cantidad sobre la cual se impuso una contribución del 2 por ciento, que pagó al colector bajo protesta.

''El fundamento de esta protesta es que las ventas así efectuadas por él, conforme revela el pliego de excepciones, 'fueron efectuadas mientras el tabaco estaba en depósito (*in bond*) dentro del almacén de depósito; que dicha contribución fué impuesta y cobrada sobre el valor del tabaco y sobre el importe de las estampillas que por ministerio de ley debía adherirse al mismo antes de salir del almacén de depósito, que el valor del tabaco así vendido era $787,855.67 y el de las estampillas fijadas al mismo $468,144.33; y que el demandante, como comerciante comisionista que era, cobraba comisiones a sus principales, tanto sobre el valor del tabaco en depósito como sobre la suma invertida en las estampillas; que la contribución especial fué impuesta y cobrada tanto sobre el valor del tabaco como sobre el importe de las estampillas.'

''La corte se negó a instruir al jurado que la contribución sobre las ventas efectuadas por el demandante había sido debidamente impuesta por el demandado sobre el importe bruto de ellas, o sea, $1,256,000, y por el contrario le instruyó que la contribución especial del 2 por ciento sobre el importe de las ventas de traficantes en

tabaco no podía propiamente ser cobrada sobre las estampillas que debían adherirse al tabaco en depósito, y que en lo que concernía a la contribución pagada por el demandante sobre las estampillas, éste tenía derecho a obtener una sentencia por su importe.

"La ley de julio 20, 1868, c. 186, bajo la cual se impusieron esas contribuciones, provee que 'los traficantes en tabaco cuyas ventas anuales pasen de cien dólares y no excedan de mil, pagarán cinco dólares cada uno, y cuando sus ventas anuales excedan de mil dólares, pagarán dos dólares adicionales por cada mil dólares en exceso de los primeros mil dólares. Toda persona que se dedique a vender u ofrecer en venta tabaco manufacturado, picadura, o cigarros será considerada como traficante en tabaco.' 15 Stat. 125, 152.

"Es indudable que el legislador al aprobar este estatuto solamente tuvo la intención de fijar una contribución a las ventas de tabaco, y si el traficante también era dueño de las estampillas que iban a utilizarse en el pago de los impuestos sobre el tabaco, él podía venderlas separadamente hasta cualquier suma, sin estar sujeto a una contribución sobre tales ventas. Antes de adherírsele al tabaco esas estampillas no forman parte del valor del mismo y pueden ser compradas y vendidas por el valor que representan como objeto independiente a ser utilizado a voluntad de los adquirentes. Sobre tales ventas no se fija contribución alguna ni al vendedor ni al comprador.

"Por otra parte somos de opinión que una vez que estas estampillas son adheridas al tabaco y canceladas y cuando ya jamás puede volvérseles a usar, ellas dejan de tener un valor separado e independiente, y el que antes habían tenido se confunde o incorpora en el del tabaco. Toda venta posterior se efectúa sobre la base del valor aumentado que el tabaco ha adquirido a virtud del pago del impuesto representado por la estampilla, y nunca puede ser calculado independientemente de ésta.''

La regla fué confirmada por la propia Corte Suprema en *Jones, Executrix,* v. *Van Benthuysen,* 115 U.S. 464, en los siguientes términos:

"Este recurso fué iniciado por Van Benthuysen, demandado en el recurso de error, que era un comerciante comisionista que se dedicaba a la venta de tabaco manufacturado, con el objeto de recobrar de Stockdale, colector de rentas internas, ciertas contribuciones pagadas por él bajo protesta sobre el importe de las ventas de un tabaco que se hallaba en un almacén de depósito. La única con-

troversia gira en torno a si el comerciante debe pagar contribuciones sobre el valor total de las estampillas adheridas al tabaco al tiempo de ser sacado del almacén. El caso se vió ante este tribunal durante el término de octubre de 1880, y aparece publicado en 103 U. S. 87. Resolvimos allí que 'al comerciante no podía imponérsele una contribución por los sellos de rentas internas que debían adherirse al tabaco antes de ser sacado del almacén de depósito, a menos que al tiempo de efectuarse tales ventas ya las estampillas hubieren sido adheridas, entrando así a formar parte del valor del tabaco y del precio del mismo.' De acuerdo con esta resolución la sentencia de la corte inferior fué revocada, y el caso devuelto para nuevo juicio. El presente recurso de error fué instruído con el propósito de revisar la sentencia dictada en el segundo juicio. El pliego de excepciones demuestra que la instrucción transmitida al jurado siguió casi textualmente las palabras de la opinión de este tribunal al interpretar la ley de que dependen los derechos de las partes, y cubría el caso en su totalidad.''

No hay duda de que el caso que estamos considerando no es exactamente igual al resuelto por la Corte Suprema de los Estados Unidos que dejamos citado porque aquí se trata de una contribución sobre la propiedad y allí se trataba de un impuesto sobre ventas, pero tampoco la hay de que en ambos la cuestión envuelta era la del valor de la mercancía a los efectos del pago de la contribución o el impuesto calculado tomando en consideración dicho valor.

El Tesorero por mandato de la ley—artículo 295 del Código Político—viene obligado a tasar la propiedad ''en su valor real y efectivo'' y el valor de las mercancías en este caso dado por su mismo dueño era el de $17,632.58, formando parte de él el de los sellos a ellas adheridos. El valor en venta, real y efectivo, de dichos bienes en el mercado fué, pues, el que sirvió de base a la tasación.

No impugna la demandante la tasación de su efectivo. ¿Y qué otra cosa eran los sellos sino efectivo empleado en algo que la demandante necesitaba para vender su mercancía? Ella cobraba al consumidor el precio total, reembolsándose de lo invertido tanto en las mercancías en sí como en los sellos, más la ganancia propia del negocio.

No nos encontramos, pues, frente a un caso de una contribución de propiedad sobre un valor que no existe, ni al de una doble contribución, ni puede aceptarse que las estampillas de rentas internas fijadas a los cigarrillos no le añadieran valor, ni que éstas sólo constituyan más que recibos demostrativos de haberse satisfecho el impuesto, como sostiene la parte apelada.

Aceptamos que el dinero pagado por las estampillas es propiedad del Gobierno como también sostiene la apelada, pero no creemos que ese hecho impida el cobro de la contribución a la inversión de su dinero por parte del contribuyente a los fines de su negocio. También el dinero que pagó por la mercancía es propiedad de su vendedor y eso no obstante la mercancía producto de la inversión es propiedad tributable.

*Siendo ésa la opinión que del caso hemos formado, claro es que procede que revoquemos la sentencia apelada y en vez de ella dictemos otra declarando la demanda sin lugar, sin especial condenación de costas.*

El Juez Asociado Sr. De Jesús no intervino.